# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

MID-CONTINENT CASUALTY CO., a foreign
corporation,

           Plaintiff,

vs.                                                    CASE NO.:  2:10-cv-00523-JES-DNF

BAYWOOD CONSTRUCTION, INC., a
Florida Corporation, JERALD and MELISSA
ADCOCK, citizens of Florida, DARLENE
CANNISTRACI, a citizen of Florida, LEE and
MELINDA FERGUSON, citizens of Florida,
HARBHAJAN HAYRE, citizen of
Massachusetts, JOHN and JAYCINE LESTER,
citizens of Florida, LARRY SCHILLER, a
citizen of Tennessee, EDWARD MANCINI and
GRACE SOLVIK, citizens of New Jersey,
HELEN REINO, a citizen of New Jersey,
MARIE OCTOBRE, citizen of New York,
LYNDON MERTZ, a citizen of North Dakota,
WILSON FAJARDO and ESTHER
GONZALEZ, citizens of Florida, MICHAEL
ANDERSON and KARLA CAMPOS, citizens
of Florida, ASHOK MALHOE, a citizen of
Florida, and ANGEL and YVETTE
SANTIAGO, citizens of Florida,

           Defendants.                                        /

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Mid-Continent Casualty Company ("MCC"), sues the Defendants, Baywood

Construction, Inc. ("Baywood") and Jerald and Melissa Adcock ("Adcock"), Darlene Cannistraci

("Cannistraci"), Lee and Melinda Ferguson ("Ferguson"), Harbhajan Hayre ("Hayre"), John and

Jaycine Lester ("Lester"), Larry Schiller ("Schiller"), Edward Mancini and Grace Solvik

("Mancini"), Helen Reino ("Reino"), Marie Octobre ("Octobre"), Lyndon Mertz ("Mertz"),

Wilson Fajardo and Esther Gonzalez ("Fajardo"), Michael Anderson and Karla Campos ("Anderson"), Ashok Malhoe ("Malhoe"), and Angel and Yvette Santiago ("Santiago") (collectively, the "Homeowners") for declaratory relief as follows:

1.     This is an action for declaratory relief pursuant to 28 U.S.C. §2201 for the purposes of determining an actual controversy between the parties as to the scope of MCC's duty to indemnify under its contracts of insurance with Baywood.

2.     The plaintiff, MCC, is an Ohio Corporation with its principal place of business in Tulsa, Oklahoma.

3.     The defendant, Baywood, is a Florida Corporation with its principal place of business in Cape Coral, Florida.

4.     The defendants, Adcock, are citizens of the state of Florida and currently reside in Cape Coral, Florida.

5.     The defendant, Cannistraci, is a citizen of the state of Florida and currently resides in Cape Coral, Florida.

6.     The defendants, Ferguson, are citizens of the state of Florida and currently reside in Cape Coral, Florida.

7.     The defendant, Hayre, is a citizen of the state of Massachusetts and currently resides in South Natick, Massachusetts.

8.     The defendants, Lester, are citizens of the state of Florida and currently reside in Cape Coral, Florida.

9.     The defendant, Schiller, is a citizen of the state of Tennessee and currently resides in Etowah, Tennessee.

14489250v1  0909960  56475

10.     The defendants, Mancini, are citizens of the state of New Jersey and currently reside in South Amboy, New Jersey.

11.     The defendant, Reino, is a citizen of the state of New Jersey and currently resides in Glassboro, New Jersey.

12.     The defendant, Octobre, is a citizen of the state of New York and currently resides in Jamaica, New York.

13.     The defendant, Mertz, is a citizen of the state of North Dakota, and currently resides in Mandan, North Dakota.

14.     The defendants, Fajardo, are citizens of the state of Florida and currently reside in Cape Coral, Florida.

15.     The defendants, Anderson, are citizens of the state of Florida and currently reside in Cape Coral, Florida.

16.     The defendant, Malhoe, is a citizen of the state of Florida and currently resides in Cape Coral, Florida.

17.     The defendants, Santiago, are citizens of the state of Florida and currently reside in Cape Coral, Florida.

18.     Jurisdiction is proper because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest and costs.

19.     Venue is proper in the United States District Court for the Middle District of Florida, Fort Myers Division, because one or more defendants reside here, or the events or omissions giving rise to the claims set forth below occurred here.

14489250v1 0909960 56475

20.     MCC entered into contracts of insurance with Baywood, Policy No. 04-GL-000620737 which was in effect from 2/15/2006 to 2/15/2007, with limits of liability of $500,000 per occurrence and $1,000,000 in the aggregate, and a $10,000 deductible per claim for property damage liability; No. 04-GL-000663491 which was in effect from 2/15/2007 to 2/15/2008, with limits of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate, and a $25,000 deductible per claim for property damage liability; No. 04-GL-000705625 which was in effect from 2/15/2008 to 2/15/2009, with limits of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate, and a $5,000 deductible per claim for property damage liability; No. 04-GL-000747080 which was in effect from 2/15/2009 to 2/15/2010, with limits of liability of $1,000,000 per occurrence and $2,000,000 in the aggregate, and a $5,000 deductible per claim for property damage liability Copies of the policies are attached as Composite Exhibit "A" (the "Policies").

21.     The Policies contain the following pertinent insuring agreement:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or

4

settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.   This insurance applies to "bodily injury" and "property damage" only if:

   (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory":

   (2)   The "bodily injury" or "property damage" occurs during the policy period; and

   (3)   Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1)   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2)   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

14489250v1  0909960  56475

(3)   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

22.   The Policies contain the following pertinent exclusions:

**2.   Exclusions**

This insurance does not apply to:

\* \* \*

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.     Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1)   That the insured would have in the absence of the contract or agreement; or

(2)   Assumed in a contract or agreement that is an "insured contract", provided the 'bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

6

**k.**     **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

\* \* \*

**m.**     **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

> (1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

> (2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**     **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

(3)     "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency. inadequacy or dangerous condition in it.

\* \* \*

23.     The Policies contain the following pertinent definitions:

**SECTION V – DEFINITIONS**

\* \* \*

7

14489250v1 0909960 56475

3.     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

8.     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\* \* \*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

16.    "Products-completed operations hazard":

    a.     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            (a)    When all of the work called for in your contract has been completed.

            (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than

14489250v1  0909960  56475

another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.   Does not include "bodily injury" or "property damage" arising out of:

(1)   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by your, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2)   The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)   Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.**   "Property damage" means:

a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**21.**   "Your product":

a.   Means:

(1)   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)   You;

(b)   Others trading under your name; or

(c)   A person or organization whose business or assets you have acquired; and

14489250v1  0909960  56475

        (2)     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b.     Includes:

        (1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2)     The providing of or failure to provide warnings or instructions.

   c.     Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

   a.     Means:

        (1)     Work or operations performed by you or on your behalf; and

        (2)     Materials, parts or equipment furnished in connection with such work or operations.

   b.     Includes:

        (1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        (2)     The providing of or failure to provide warnings or instructions.

24.    The Policies contain the following endorsement:

## EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

2.    Exclusions

    This insurance does not apply to:

14489250v1  0909960  56475

**l.**      **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and
included in the "products-completed operations hazard."

\* \* \*

25.      Baywood, as a general contractor, was the builder of Adcock's home, located at
1121 Northwest 9th Avenue, Cape Coral, Florida 33993; Cannistraci's home, located at 1203
Trafalger Parkway, Cape Coral, Florida 33991; Ferguson's home, located at 2704 Northeast
Juanita Place, Cape Coral, Florida 33909; Lester and Schiller's homes, located at 1901 Northeast
4th Place, Cape Coral, Florida 33993 ("the 1901 Northeast 4th Place property"), 921 Northwest
8th Place, Cape Coral, Florida 33993 ("the 921 Northwest 8th Place property"), and 13861 Fern
Trail Drive, Cape Coral, Florida 33903 ("the 13861 Fern Trail Drive property"); Hayre's home,
located at 301 Northwest 19th Terrace, Cape Coral, Florida 33904; Mancini's home, located at
235 Northeast 21st Avenue, Cape Coral, Florida 33909; Reino's home, located at 921 Southwest
23rd Street, Cape Coral, Florida 33909; Octobre's home, located at 1609 Southwest 22nd Lane,
Cape Coral, Florida 33991; Mertz's home, located at 328 Northwest 4th Terrace, Cape Coral,
Florida 33993; Fajardo's home, located at 1730 Northeast 7th Avenue, Cape Coral, Florida
33909; Anderson's home, located at 2105 Southwest 39th Terrace, Cape Coral, Florida 33914;
Malhoe's home, located at 1617 Southeast 21st Street, Cape Coral, Florida 33990; and Santiago's
home, located at 4018 Northwest 12th Street, Cape Coral, Florida 33993 (collectively, "the
Projects").

26.      The certificate of occupancy for Adcock's home was issued on December 12,
2006.

27.     The certificate of occupancy for Cannistraci's home was issued on December 21, 2006.

28.     The certificate of occupancy for Ferguson's home was issued on December 20, 2006.

29.     The certificates of occupancy for Lester and Schiller's homes were issued on August 17, 2006 (the 1901 Northeast 4th Place property), September 6, 2006 (921 Northwest 8th Place property), and November 7, 2006 (13861 Fern Trail Drive property).

30.     The certificate of occupancy for Hayre's home was issued on November 28, 2006.

31.     The certificate of occupancy for Mancini's home was issued on July 26, 2006.

32.     The certificate of occupancy for Reino's home was issued on November 17, 2006.

33.     The certificate of occupancy for Octobre's home was issued on October 11, 2006.

34.     The certificate of occupancy for Mertz's home was issued on November 13, 2006.

35.     The certificate of occupancy for Fajardo's home was issued on August 15, 2005.

36.     The certificate of occupancy for Anderson's home was issued on October 6, 2006.

37.     The certificate of occupancy for Malhoe's home was issued on September 27, 2006.

38.     The certificate of occupancy for Santiago's home was issued on September 6, 2006.

39.     The certificates of occupancy for Lester and Schiller (the 1901 Northeast 4th Place, 921 Northwest 8th Place and 13861 Fern Trail Drive properties), Ferguson, Octobre, Mertz, Fajardo, Anderson, Malhoe, Santiago's homes are attached as Composite Exhibit "B."

14489250v1 0909960 56475

40.     Anderson first discovered damage to their property in April 2009 claims bodily injury first began in January 2009.

41.     Baywood was sued by Adcock, Cannistraci, Ferguson, Hayre, Lester and Schiller (regarding the 13861 Fern Trail Drive property), Mancini, and Reino in an omnibus class action complaint in the United States District Court for the Eastern District of Louisiana under Civil Action No. 09-7628, styled *Sean and Beth Payton v. Knauf Gips KG, et al.* Baywood was sued by Lester and Schiller (regarding the 821 Northwest 8th Place property and the 1901 Northeast 4th Place property) and Octobre in an omnibus class action complaint in the United States District Court for the Eastern District of Louisiana under Civil Action No. 10-361, styled *Kenneth and Barbara Wiltz v. Beijing New Building Materials Public Ltd. Co., et al.* Baywood was sued by Mertz in an omnibus class action complaint in the United States District Court for the Eastern District of Louisiana under Civil Action No. 10-362, styled *Joyce W. Rogers, et al. v. Knauf Gips KG, et al.* Baywood was sued by Fajardo, Anderson, Lester and Schiller (regarding the 921 Northwest 8th Place property and the 13861 Fern Trail Drive property), Malhoe, and Santiago in an omnibus class action complaint in the United States District Court for the Eastern District of Louisiana under Civil Action No. 09-6690, styled *David Gross, et al. v. Knauf Gips, KG, et al.* Fajardo, Anderson, Lester and Schiller (regarding the 921 Northwest 8th Place property), Malhoe, and Santiago intervened in the *Gross* action through the *Mary Ann Benes, et al. v. Knauf Gips, KG, et al.* Complaint in Intervention. (Collectively, these complaints are the "Underlying Actions.")[1]

---

[1] The Underlying Actions are comprised of over a thousand pages with exhibits. Under information and belief, Baywood and the Homeowners are in possession of the Underlying

42.     In the Underlying Actions, the Homeowners seek damages allegedly caused by Baywood's defective work/defective product.  These damages include the cost to remove and replace the defective work/defective product, the removal and replacement of all of the drywall, the replacement of other property such as air-conditioning and refrigerator coils, faucets, utensils, copper tubing, electrical wiring, electronic appliances, and other metal surfaces and household items.  They also seek the repair or replacement of any materials contaminated or corroded by the drywall and economic damages such as diminution of the value of the home.

43.     In addition, the Underlying Actions also seek equitable relief by way of injunctive, medical and environmental monitoring.

44.     The Homeowners also seek, in the Underlying Actions, damages associated with loss of use and enjoyment, and loss of value of the home due to stigma.

45.     Finally, the Homeowners allege bodily injury and negative health effects.

46.     Baywood tendered the Underlying Actions to MCC for a defense and complete indemnification in the event of a judgment against it in the Underlying Actions.

47.     MCC is currently defending Baywood, subject to a full and complete reservation of rights.

48.     The Homeowners are necessary parties to this action as their rights will be impacted by the court's determinations.

**COUNT I – NO DUTY TO INDEMNIFY FOR DAMAGES THAT DO NOT CONSTITUTE PROPERTY DAMAGE OR TO DEFEND OR INDEMNIFY TO THE EXTENT THE DAMAGES DID NOT TAKE PLACE DURING THE POLICY PERIODS**

49.     MCC realleges paragraphs 1 through 49 as paragraph 50 of Count I.

Actions.   Upon request, however, MCC will provide a copy of the publicly maintained

14

14489250v1  0909960  56475

50.     MCC's duty to indemnify is limited to pay damages because of property damage caused by an occurrence.  To the extent the Homeowners are seeking to recover from Baywood the cost to repair and replace Baywood's defective work/defective product, as opposed to damage caused by Baywood's defective work/defective product, or damages for economic loss in the nature of the diminished value of their home because of stigma, such damages do not meet the definition of property damage.

51.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify its insured in the Underlying Actions and in particular to:

a.     Whether MCC has an obligation to indemnify Baywood for the cost to remove and replace the defective work/defective product;

b.     Whether MCC has an obligation to indemnify Baywood for the cost to remove, repair and replace undamaged property in order to remove and replace the defective work/defective product for which no coverage is provided under the Policies;

c.     Whether MCC has an obligation to indemnify Baywood for economic damages in the nature of the diminished value of their home or stigma damages;

d.     Whether MCC has an obligation to indemnify Baywood for any equitable relief such as recall the home or repurchase of the home; and

e.     Whether MCC has an obligation to indemnify Baywood for only the damages, if any, that took place during the policy periods.

---

complaints to counsel once they make an appearance.

14489250v1  0909960 56475

Case 2:10-cv-00523-JES-DNF   Document 32   Filed 01/03/11   Page 16 of 19
Case No.:  2:10-cv-00523-JES-DNF

52.     Without this Court's declaration, the Underlying Actions cannot be settled, as the parties are in doubt as to what damages constitutes property damage, if any, under the Policies.

53.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policies.

Wherefore, MCC respectfully requests this Court to:

      a.     Take jurisdiction over this matter;

      b.     Find and declare that MCC's obligation under its Policies is limited to indemnifying Baywood for property damage, if any, as that term is defined in the Policies;

      c.     Find and declare that MCC's obligation under its Policies is limited to defending and/or indemnifying Baywood for property damage, if any, that took place during the policy periods and if no property damage took place during the policy periods that MCC has no obligation to defend or indemnify Baywood; and

      d.     Enter any other order the Court deems proper under the evidence and circumstances.

## COUNT II – NO DUTY TO INDEMNIFY FOR
## DAMAGES EXCLUDED FROM COVERAGE UNDER THE POLICIES

54.     MCC realleges paragraphs 1 through 49 as paragraph 55 of Count II.

55.     The MCC policies contain the expected and intended, breach of contract, your work, intentional acts, your product, damage to work performed by subcontractors on your behalf, impaired property and recall exclusions.

56.     In view of the foregoing, an actual and present controversy exists between the parties as to the scope of MCC's obligation to indemnify its insured in the Underlying Actions.

14489250v1  0909960 56475

57.     Without this Court's declaration, the Underlying Actions cannot be settled, as the parties are in doubt as to what damages are covered under the Policies.

58.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policies.

Wherefore, MCC respectfully requests this Court to:

   a.     Take jurisdiction over this matter;

   b.     Find and declare that MCC's obligation under its Policies is limited to indemnifying Baywood for damages, if any, not excluded by the Policies; and

   c.     Enter any other order the Court deems proper under the evidence and circumstances.

### COUNT III – NO DUTY TO INDEMNIFY FOR EQUITABLE RELIEF INCLUDING INJUNCTIVE, ENVIRONMENTAL AND MEDICAL MONITORING

59.     MCC realleges paragraphs 1 through 49 as paragraph 60 of Count III.

60.     MCC's duty to indemnify is limited to pay damages because of bodily injury or property damage caused by an occurrence.

61.     In view of the foregoing, a present actual controversy exists between the parties as to the scope of MCC's obligation to indemnify Baywood and in particular to:

   a.     initiate and pay for medical monitoring;

   b.     identify each and every home with defective drywall;

   c.     test every home in which defective drywall may be found;

   d.     recall and/or to repurchase the home; and

   e.     initiate and pay for environmental monitoring.

17

62.     Without this Court's declaration, the parties cannot settle, as the parties are in doubt as to whether equitable relief, including medical and environmental monitoring, constitutes damages and/or bodily injury/property damage under the Policies.

63.     Pursuant to 28 U.S.C. §§2201 and 2202, this Court has the power to declare the rights and obligations of MCC under the Policies.

Wherefore, MCC respectfully requests this Court to:

      a.      Take jurisdiction over this matter;

      b.      Find and declare that MCC is not obligated under the Policies to pay for the costs to initiate and pay for medical/environmental monitoring or for any other equitable relief; and

      c.      Enter any other order the Court deems proper under the evidence and circumstances.

Dated: _____, 2010.

14489250v1  0909960  56475

Case No.:   2:10-cv-00523-JES-DNF

HINSHAW & CULBERTSON LLP

Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Jody A. Tuttle
Florida Bar No. 737801
jtuttle@hinshawlaw.com
Pedro E. Hernandez
Florida Bar No. 30365
phernandez@hinshawlaw.com
9155 S. Dadeland Boulevard
Suite 1600
Miami, FL 33156-2741
Telephone:  305-358-7747
Facsimile: 305-577-1063
*Counsel for Mid-Continent Casualty Company*

14489250v1  0909960  56475